## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LINDA M. METZER,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     **Civil Action No. 06-00247** |
| | ) |
| **MICHAEL J. ASTRUE,** | )     **Judge Nora Barry Fischer** |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff, Linda Metzer ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level.

### II. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on February 24, 2003 alleging disability as of December 15, 1987. R. 48-50. The application was denied by notice dated July 25, 2003. R. 35-38. Plaintiff responded by filing a timely request for a hearing. R. 39. On January 5, 2005, a hearing was held in Pittsburgh, Pennsylvania before Administrative Law Judge William E. Kenworthy (the "ALJ"). R. 210. Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. 213-238. Frances Kinley, M.Ed., an impartial vocational expert, also testified.

R. 46-47, 235-238. On February 16, 2005, the ALJ issued a decision in which he determined that Plaintiff was not "disabled" within the meaning of the Act. R. 18-26. The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 10-12. Plaintiff now seeks review of that decision, and the matter is before this Court on cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff is no longer represented by counsel and has filed her motion for summary judgment *pro se*.

## III.  STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 108 S.Ct. 2541, 2545 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than simply state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. § 405(a), has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough

3

to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987) (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A). In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience,

4

he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112,122 (3d Cir. 2000) ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971). Even if a claimant's impairment

5

does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a Listed Impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli v. Massanari,* 247 F.3d 34, 40 n. 4 (3d Cir. 2001), *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to

6

which he or she is disabled by it. *See* 20 C.F.R. § 404.1529© (2002). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated: "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself." Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir. 1993). Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F. Supp. 648, 658 (W.D. Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present evidence to refute the claim. *See Smith v. Califano*,

7

637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992), *cert. denied* 507 U.S. 924 (1993).

## V. DISCUSSION

Employing the five step sequential evaluation pursuant to 20 C.F.R. § 404.1520, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 19. Next, the ALJ found Plaintiff to be suffering from post concussion syndrome, stemming from a work related fall which she suffered on November 25, 1986, and that her post concussion syndrome was a "severe" impairment within the meaning 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1520(c). R. 19, 21. The ALJ, however, concluded that it was not "severe" enough to meet or medically equal any of the Listed Impairments delineated in Appendix 1 to Subpart P of Part 404 of the regulations. R. 22. Proceeding to step four, in accordance with 20 C.F.R. § 404.1545, the ALJ made the following residual functional capacity assessment:

[T]he claimant retained the residual functional capacity to at least perform tasks at the sedentary exertion level, remaining seated most of the work day and lifting no more than ten pounds occasionally, avoiding tasks characterized by high levels of stress.

R. 22. Given this assessment, it was determined that Plaintiff could return to her past relevant work as secretary or a general office clerk. R. 25. Ms. Kinley's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. 236. Consequently, Plaintiff was not found to be "disabled" under 42 U.S.C. § 423(d)(1). R. 23.

In support of her motion for summary judgment, Plaintiff essentially raises three arguments:

8

first, that the ALJ mischaracterized the information contained in her medical records regarding her condition(s); second, that the ALJ failed to give adequate consideration to the medical information establishing that she suffers from an anxiety disorder which equals medically Listed Impairment 12.06 Anxiety Related Disorders; and third, the ALJ failed to give adequate consideration to the medical information establishing that Plaintiff suffers from impairments which equal medically Listed Impairment 11.18 Cerebral Trauma (Document No. 19). The Court will address each of Plaintiff's arguments in turn.

Plaintiff argues that the ALJ misstates the information contained in Plaintiff's medical records regarding her conditions and that, consequently, the ALJ "makes light of" her anxiety and depression. Plaintiff first compares the ALJ's summary of the medical treatment she received following her November 25, 1986 fall with her medical records. In his findings, the ALJ states, "She was treated in the emergency room at Presbyterian University Hospital. She reported no loss of consciousness and only mild dizziness." R. 19. Plaintiff, citing to the emergency room record, clarifies that she did not say this but that, "the emergency room report said this" (Document No. 19). While the emergency room record to which Plaintiff refers states, "mild dizziness," not "the patient reports mild dizziness," this can hardly be considered a discrepancy between the ALJ's findings and the medical record at issue. R. 93. The ALJ's finding is clearly based upon this medical record and the Court finds Plaintiff's argument to be unproductive and without merit.

Next, Plaintiff compares the ALJ's statement that she suffered from "only mild dizziness" after her fall with the December 11, 1986 medical report of Bruce L. Morgenstern, M.D., a neurologist. Plaintiff claims Dr. Morgenstern's report indicates that she suffered from "severe dizziness" (Document No. 19). In fact, Dr. Morgenstern's report states as follows:

9

> She had no loss of consciousness but did note some bruises on the left side of her body and **some subsequent dizziness which has largely diminished**. She was seen at the Presbyterian Hospital emergency room where she was told of some occipital abrasions but otherwise was discharged in good condition. The next day she developed headache and **severe dizziness** without presyncopal feelings or frank vertigo, **which has gradually resolved over the subsequent two weeks**. (Emphasis added).

R. 128. Given Dr. Morgenstern's statements that Plaintiff's dizziness had "largely diminished" and "gradually resolved," the ALJ's summary is a fair characterization of Plaintiff's condition based upon Dr. Morgenstern's report. As such, this Court does not find that any discrepancy exists between the ALJ's findings and this December 11, 1986 report from Dr. Morgenstern or that the ALJ's findings contradict or misstate this medical record. Moreover, the issue here is not so much the severity of Plaintiff's alleged dizziness but the extent to which she was limited in her ability to engage in any "substantial gainful activity" as a result of an impairment. *See Stunkard,* 841 F.2d at 59; 42 U.S.C. § 423(d)(1). Notably, Plaintiff remained employed and working at Carnegie Mellon at the time of Dr. Morgenstern's evaluation and for an additional 12 months thereafter. R. 54. Plaintiff's argument regarding the ALJ's mischaracterization of Dr. Morgenstern's report is, therefore, without merit.

Plaintiff also takes issue with the ALJ's discussion of Guy Corsello, M.D.'s report regarding Plaintiff's February 10, 1987 office visit as it relates to her lightheadedness and anxiety (Document No. 19). In his decision, the ALJ describes Plaintiff's visit with Dr. Corsello, a neurologist, as follows, "The patient complained of ... blurred vision in the left eye that had persisted for a day or two and feelings of lightheadedness." R. 20. Plaintiff compares this description with the specific language used in Dr. Corsello's report which states, "She noted blurred vision in the left eye a day

10

or two after the accident. She feels lightheaded and high continuously." R. 97. Although the ALJ did not include the word "continuously" in his decision, his findings here are supported by Dr. Corsello's report and do not misstate or contradict the information in the report. Plaintiff also complains that the ALJ misstates Dr. Corsello's report regarding her anxiety and depression. Describing Dr. Corsello's report, the ALJ states, "he indicated that the loss of a portion of the sense of smell might result in some anxiety and depression." R. 20. Plaintiff compares this with Dr. Corsello's actual notes which state,

> I believe that her physical problems related to the head injury on November 25, 1986, are not sufficient to handicap her at work but certainly the loss of sense of smell or portion of sense of smell can result in depression. She seems to have significant problems related to anxiety and depression. These may be sufficient to impair her ability to work but I am not an expert in psychiatry and cannot make a statement in that regard.

R. 98. Given Dr. Corsello's comments that the loss of the sense of smell "can" result in depression and that Plaintiff "seems" to have significant problems related to anxiety and depression, the ALJ's findings do not contradict the records of Dr. Corsello's evaluation of Plaintiff and, instead, are supported by the medical records. Moreover, even assuming the ALJ misstated the information in Dr. Corsello's report regarding Plaintiff's anxiety and depression, the ALJ's decision is supported by substantial evidence as Dr. Corsello points out that he is not an expert in psychiatry and cannot make a statement regarding whether her apparent anxiety and depression are sufficient to impair her ability to work. R. 98. *See Combs v. Barnhart*, No. 03-5526, 2005 WL 1995457, at \*3 (E.D. Pa. Aug. 13, 2005) (holding that the ALJ's misstatement that the plaintiff had not described any pain consistent with RSD, despite medical evidence to the contrary, was not reason enough to remand as there was still substantial evidence to support the ALJ's decision) *citing Caballero v. Barnhart*, No.

11

02-7402, 2003 U.S. Dist. LEXIS 19485, at *20 (E.D. Pa. Sept. 30, 2003) (submitting that a harmless error does not necessitate a re-mand); *compare Neumerski v. Califano,* 513 F. Supp. 1011, 1015 (D.C. Pa.1981) (holding that the ALJ's decision that the plaintiff did not establish that he sustained organic brain dysfunction was not supported by substantial evidence where it misstated the uncontroverted conclusions reached by plaintiff's physician who did find organic brain dysfunction).

Plaintiff also argues that the ALJ mischaracterized the notes of Lowell Lubic, M.D., a neurologist, from Plaintiff's February 19, 1987 visit (Document No. 19 at 8). The ALJ states in his decision, "Dr. Lubic wanted to obtain an EEG, but the patient would not permit the test." The report from Plaintiff's visit with Dr. Lubic states, "I wanted to get an Electroencephalogram on her but she states she couldn't lie on the couch with the wires on her head because it makes her nervous." R. 100. Plaintiff argues that "The ALJ is twisting words around to make plaintiff seem uncooperative" (Document No. 19 at 8). While Plaintiff may not care for the ALJ's description of her refusal to submit to the EEG, it is entirely accurate based upon Dr. Lubic's notes. Also regarding Plaintiff's visit with Dr. Lubic, the ALJ includes in his decision, "In addition, he observed that the patient appeared to have some anxiety problems associated with the head injury." R. 21. On this issue, Dr. Lubic's report specifically states, "she has significant anxiety problems associated with the head injury." R. 100. Plaintiff asserts that the ALJ is "making light of" her anxiety and depression problems. Although the ALJ's description seems to downplay Dr. Lubic's comments regarding Plaintiff's anxiety, the ALJ's findings are not contradicted by Dr. Lubic's medical records and the difference between the ALJ's decision and the medical report are too subtle to be regarded as misstatements. *See Combs*, No. 03-5526, 2005 WL 1995457, at *3. Furthermore, as explained above, the focus here is not whether Plaintiff suffered from "some anxiety problems" or "significant

12

anxiety problems." The issue is whether Plaintiff suffered from an impairment which limited her ability to engage in any "substantial gainful activity." Dr. Lubic renders no opinion on this issue and, in fact, Plaintiff was still working at Carnegie Mellon at the time of his evaluation. R. 54, 100.

Plaintiff next attacks the ALJ's summary of the consultative psychiatric evaluation performed on her by Mohamed Ismael, M.D., on September 28, 2004 (Document No. 19 at 9). Specifically, Plaintiff takes issue with the following sentence, "On the date of his examination in 2004 Dr. Ismael recorded a diagnosis only of a mood disorder due to medical condition." R. 22. Plaintiff objects to the ALJ's use of the word "only," claiming the ALJ "makes it [her mood disorder] sound unimportant" (Document No. 19 at 9). Based upon the references to anxiety and depression in Plaintiff's medical records, the ALJ's use of "only" was likely not meant to diminish the importance of her mood disorder, but, rather, to indicate that the condition diagnosed by Dr. Ismael was *not* anxiety or depression. In any event, the ALJ's inclusion of the word "only" is of no dispositive significance. Plaintiff also notes that the ALJ did not include in his decision Dr. Ismael's statement that "prognosis is guarded due to lack of specialized treatment, social judgment was impaired, and persistence and pace are unpredictable depending on her general health." Dr. Ismael's evaluation of Plaintiff, however, occurred nearly twelve years after her insured status expired. As such, his comments and opinions regarding Plaintiff's condition as of September 28, 2004 hardly correlate to her condition prior to December 31, 1992. Ultimately, Dr. Ismael did not diagnose Plaintiff as having a mental disorder during the period adjudicated or impose work related limitations on her due to any disorder. Consequently, any variance used in the wording of the ALJ's decision to describe Dr. Ismael's evaluation of Plaintiff or the ALJ's failure to include certain findings by Dr. Ismael in his decision is insignificant and not relevant to the issues before this Court.

13

While Plaintiff may not care for the ALJ's description of her medical records, his statements do not misstate or contradict the information contained in the records. His ultimate findings, that Plaintiff did not suffer from a listed impairment or suffer from impairments which equal medically a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 and that Plaintiff was able to perform at least sedentary work that did not involve high levels of stress, are strongly supported by the evidence.

Plaintiff's second argument is that the ALJ failed to give adequate consideration to the medical information establishing that she suffers from an anxiety disorder which equals medically the listed impairment for anxiety found in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06 (Document No. 19 at 9). Specifically, Plaintiff claims that Dr. Lubic diagnosed anxiety problems, Dr. Corsello diagnosed depression and emotional problems, Dr. Rosen diagnosed post traumatic syndrome and Dr. Busis diagnosed psychosomatic overlay and that chiropractors Paltis and Hartford indicated emotional problems (Document No. 19 at 8-9). The ALJ, however, found that there is no evidence of any medically established diagnosis of a mental impairment prior to December 31, 1992. R. 22. *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00(A) ("The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s)"). This determination is supported by Plaintiff's medical records. Notably, there are no medical records from a psychiatrist or a psychologist who has evaluated Plaintiff as Plaintiff has never been under the care of a psychiatrist or a psychologist for treatment or possible treatment. *See Bledsoe v. Barnhart,* No. 05-00052, 2006 WL 2819384, *9 (W.D. W.Va. Oct. 2, 2006) (noting that the plaintiff, who suffered from depressive disorder and anxiety disorder which did not medically equal a listed impairment, had not seen any mental health source for treatment or counseling). As for those

14

physicians who have evaluated Plaintiff, none of them have diagnosed Plaintiff as suffering from a mental impairment.

Indeed, the only comments made by Dr. Lubic regarding Plaintiff's mental state are that "anxiety is playing a large role in this patient's symptoms" and that she "has significant anxiety problems associated with the head injury." R. 99-100. He does not diagnose her as suffering from any mental disorder and opines that other than some potential olfactory nerve damage due to the fall, her neurological exam was "totally normal." R. 99-100. Dr. Corsello specifically opined that Plaintiff's mental state was "normal" in his February 12, 1987 report while acknowledging that Plaintiff "seemed somewhat depressed" and that "she seems to have significant problems related to anxiety and depression." R. 97-98. Dr. Corsello recommended that Plaintiff see a psychiatrist, but did not diagnose her as suffering from any mental disorder. R. 98. Dr. Rosen, also a neurologist, noted in his April 4, 1991 report that Plaintiff was "very obsessive and introspective - difficulty holding train of thought," and wrote that his impression was that Plaintiff had a cerebral concussion that led to post traumatic syndrome, traumatic insomnia, Holmes-Adie symptoms, and post traumatic cervical and lumbar fibromyositis. R. 101. He recommended psychological testing, but did not diagnose Plaintiff as suffering from any mental disorder. R. 101. In his office notes dated June 25, 1991, Dr. Busis cautiously opines, "I think she has a post-traumatic syndrome with a lot of psychosomatic overlay" and suspects that after reviewing Plaintiff's old records he will recommend an MRI scan of the brain and neuropsychological testing. R. 173. Dr. Busis does not diagnose Plaintiff as suffering from any mental disorder. R. 173. The ALJ did take into account the opinions of chiropractors Paltis and Hartford, noting that they are not considered to be qualified medical expert opinions. R. 23.

15

Plaintiff also points to the diagnosis of Dr. Ismael in support of her claim that she suffers from a mental disorder which equals a listed impairment. As discussed above, Dr. Ismael did not opine that Plaintiff suffered from a mood disorder prior to December 31, 1992.

Consequently, the record contains no opinion from any physician or psychologist that her condition met or equaled the requirements of a listed mental impairment prior to December 31, 1992. It is worth noting that Plaintiff has never taken any medication for her claimed anxiety and depression. R. 223-224. As such, the ALJ's determination that Plaintiff's anxiety and depression do not meet or equal any listed impairment is supported by substantial evidence.

Plaintiff's third and final argument is that the ALJ failed to give adequate consideration to the medical information establishing that Plaintiff's post concussion syndrome is a severe impairment which medically equals the listed impairment for cerebral trauma found in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.18 (Document No 19 at 10). As pointed out by the ALJ, listing 11.18 indicates that cerebral trauma may be evaluated under the provisions of listings 11.02 convulsive epilepsy, 11.03 nonconvulsive epilepsy, 11.04 central nervous system vascular accident, or 12.02 organic mental disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.18. The ALJ concluded that listings 11.02 and 11.03 did not apply since there has not been any seizure disorder. R. 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02 (requiring documented seizure pattern), § 11.03 (requiring documented seizure pattern). This finding is clearly supported by the medical evidence as there is no mention of Plaintiff suffering from any seizures or exhibiting seizure-like behavior. The ALJ next opines that listing 11.04 does not apply because there is no evidence of aphasia or significant and persistent disorganization of motor function. R. 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04 (requiring sensory or motor aphasia resulting in ineffective speech or significant

16

and persistent disorganization of motor function in two extremities). This finding is also supported by the medical evidence: Dr. Morgenstern reported that Plaintiff's motor strength was 5/5 without drift or focal weakness, R.129; Dr. Corsello reported that Plaintiff's reflexes were symmetrical, her coordination and gait were normal, and that her sensation and motor exams were normal, R. 98; Dr. Whoolander, a general practitioner, indicates in his report from Plaintiff's March 28, 1989 visit that Plaintiff's physical examination was normal apart from findings relative to her left pupil, R. 136; and Dr. Busis reported that Plaintiff exhibited no motor weakness or ataxia, that her gait and station were normal and that she could walk on her heels, on her toes, and tandem walk, R. 172. Furthermore, there is no mention of aphasia or ineffective speech in Plaintiff's medical records. Finally, the ALJ determined that listing12.02 is not met since there is no evidence of disorientation, memory impairment, perceptual disturbance, change in personality, disturbance in mood, emotional lability or loss of measured intellectual capacity. R. 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02 (requiring the medically documented persistence of at least one of the following: disorientation, memory impairment, perceptual disturbances, change in personality, disturbance in mood, emotional lability, or loss of measured intellectual ability). Indeed, none of the physicians' reports discussed above mention any of these symptoms. In fact, Dr. Corsello noted in his report that Plaintiff's mental status was normal despite the fact that she seemed depressed. R. 97.

Plaintiff points to the records of Drs. Hartford, Paltis and Ismael in support of her claim that she suffers from impairments which equal medically listing 11.18. (Document No. 19 at 11). Dr. Hartford, a chiropractor, noted that Plaintiff complained of loss of mental thought and short term memory, but offered no opinion or evidence in this regard. R. 110-112. The reports of Dr. Paltis, who began treating Plaintiff a couple of months after her 1986 fall, do not reference any mental or

17

emotional issues until 1996, nearly ten years after the fall and more than three years after Plaintiff's last date insured. R. 114-119. Dr. Paltis' April 7, 1989 report, wherein she acknowledges that she has been treating Plaintiff since January 21, 1988, does not mention or indicate that Plaintiff exhibited or complained of any mental or emotional issues whatsoever. R. 119. In a March 8, 1995 report, Dr. Paltis makes no mention of any mental or emotional issues other than Plaintiff's difficultly in maintaining mental focus. R. 118. Less than one year later, on February 6, 1996, Dr. Paltis authored a letter listing "emotional disturbances" as one of Plaintiff's symptoms which improves with chiropractic treatment. R. 116. It was not until her August 16, 1996 letter that Dr. Paltis reported observing negative personality changes in Plaintiff. R. 114. Again, that is nearly ten years after the fall and more than three years after Plaintiff's last date insured. Furthermore, the beliefs expressed by Chiropractors Hartford and Paltis are not qualified medical opinions. *See* 20 C.F.R. 404.1513. With regard to Dr. Ismael, his opinions are of no consequence for purposes of this decision as his evaluation occurred nearly twelve years after Plaintiff's insured status expired and his comments and opinions do not address Plaintiff's condition prior to December 31, 1992. As such, the ALJ's finding that Plaintiff's post concussion syndrome does not medically equal listed impairment 11.18 cerebral trauma or any other listed impairment is strongly supported by the medical evidence in this case.

Plaintiff also argues that the ALJ failed to include the report of Neil A. Busis, M.D., a neurologist, in the portion of the decision where he discusses Plaintiff's relevant medical history. Specifically, Plaintiff claims that the ALJ should have included the following statements from Dr. Busis' July 24, 1991 report, which support her claim that she suffers from an impairment which equals medically a listed impairment: "the patient has a post traumatic syndrome with a lot of

18

psychosomatic overlay," R. 107; "as mentioned by other physicians, there could have been some shearing at the level of the cibriform plate that disturbed her sense of smell," R. 107; and "[t]he patient's prognosis must be considered poor regardless of the final diagnosis because of the persistence of her symptoms for so many years after her accident," R. 108. Dr. Busis, however, did not evaluate Plaintiff for purposes of providing medical treatment. Rather, Dr. Busis was performing an independent medical examination for the workers' compensation insurer involved in Plaintiff's workers' compensation case stemming from her work related fall at Carnegie Mellon. R. 104. In any event, Dr. Busis did not opine that Plaintiff suffered from any mental disorder, disorientation, memory impairment, perceptual disturbances, change in personality, disturbance in mood, emotional lability, or loss of intellectual ability. In fact, his only comment regarding her mental/emotional status was that she appeared "quite anxious." R. 103. As such, the report of Dr. Busis only confirms the ALJ's finding that Plaintiff's post concussion syndrome does not medically equal listed impairment 11.18 cerebral trauma or any other listed impairment

The Commissioner's ultimate determination of non-disability is supported by substantial evidence. The decision of the Commissioner must be affirmed.

## VI. CONCLUSION

Based upon the record before it, the Court concludes that the final decision of the Commissioner is "supported by substantial evidence." 42 U.S.C. § 405(g). For this reason, Plaintiff's Motion for Summary Judgment (Document No. 18) is denied and the Commissioner's Motion for Summary Judgment (Document No. 20) is granted. An appropriate order follows.

Nora Barry Fischer
United States District Judge

cc:    Linda M. Metzer
       64 Hennig Drive
       Pittsburgh, PA 15236-1524

       Jessica Lieber Smolar, Esquire
       Assistance United States Attorney

20